It pleads the court, the action before your honors today involves a challenge to an administrative agency and an action by that agency that is fundamentally unconstitutional. It is fundamentally unconstitutional for at least three reasons, your honors, and the first being that the right to a trial by jury. The order under review effectively deprives Mr. Johnson from any sort of livelihood in his chosen profession and it was done by an administrative agency without a right to jury. The second aspect involves the structure of the statute itself, your honors, which if you accept the Federal Trade Commission's argument, what we find ourselves with is an unconstitutionally delegated exercise of legislative power and that is because under the interpretation offered by the Federal Trade Commission in support of the order, there is no intelligible principle on which one could figure out what Congress intended to delegate to the executive branch. The last portion, your honors, involves what are impermissible statutory removal restrictions on at least two sets of actors, here the commissioners that are appointed to the Federal Trade Commission and two, the administrative law judge that oversaw it and this court has addressed that and ruled that the administrative law judge is an unconstitutionally appointed officer. On the point of the civil jury trial, I think, your honors, that this court's decision in Jarchese, which was issued last year, establishes that an agency prosecution involving a private right cannot proceed administratively without a jury. A trial by jury is a fundamental right that is guaranteed to the petitioners by the jury. In the Axon Enterprise case decided by the Supreme Court, Justice Thomas remarked on, in a concurring opinion, remarked on the kind of rights that are at issue and his quote is, as I have explained, when private rights are at stake, full Article III adjudication is likely required. Private rights encompass the three absolute rights, life, liberty, and property, so-called because they appertain and belong to particular men merely as individuals, not to them as members of society or standing in various relations to each other. That is not dependent upon the will of the government. And so a trial by jury is a fundamental aspect of the protection of a private right and as this court observed in Jarchese, there's a two-stage analysis. We've addressed that most recently in our reply brief, which was filed post-Jarchese, but it's a two-stage analysis. It's one determining whether or not the action at issue arises out of common law. Here, much like the Jarchese case, you have what amounts to a fraud or misrepresentation prosecution. Those are common law creations. They existed in common law. An action for civil penalties, which is what this began as, or injunctive relief relating to those penalties, is an action arising under common law. So I think the first prong of Jarchese is squarely satisfied. You have an action that arises under common law. Interestingly enough, in this particular action, Your Honors, what originally began as an administrative action seeking to impose civil penalties, midway through, the Supreme Court ruled that it was an administrative action seeking to impose civil penalties. But I don't think that changes the analysis because with this order, the Federal Trade Commission has been empowered to seek future civil penalties and so I think the same analysis applies. The next step is to determine if at issue is a public right, which the Constitution does allow for the adjudication at the executive level without a jury trial, or whether it's a private right. And I think, I've quoted Justice Thomas, I think this particular action, wherein the Federal Trade Commission has taken away an individual and his company's livelihood and said he can never do that again in his entire life, is and involves a fundamental private right. It is not something, for instance, OSHA, I think is the easiest public right, at common law, worker safety, workplace safety rules, things like that did not exist at common law, whereas fraud prosecutions always did. So I think that prong is easily satisfied that what we have here is an inherently private right that qualifies for a right to a civil  So on the subject of the Fifth Amendment, jury argument was raised in your reply brief under Cotham and in other cases. Did you need to have raised that issue below in the agency? I'm not talking about your other issue, but your jury issue. A, when need you have first raised it, did you raise it below and then B, here you raised it in a reply brief. So I think I recall the other side's issue. So just speak to that issue. Yes, interesting question, Judge Stewart. Thank you. I think, first off, we did raise the inherent violations of due process rights below. We were not allowed to try that because what happened was the agency summarily took away any evidentiary hearing or trial. But I think more particularly recently in the Axon case, Judge Stewart, up until about two a petitioner did not have a right to proceed with, really didn't have a right to challenge constitutional issues in an administrative action. And what Axon, I think, recognized is that the agency is A, not well-suited to deal with constitutional challenges. Well, you could have raised it just like the people in that case did. In other words, if you had the right to raise it, you could have taken it up with the Supreme Court like anybody else. Axon, Your Honor, involved a situation where they affirmatively filed in the district court and the Supreme Court now recognizes a previously unrecognized right of original jurisdiction in the district court to raise constitutional challenges. Before then, the FTC's position . . . You can go to the district court now, right? Theoretically, Judge Richman, we could go to the district court and bring the constitutional challenges. At the time when this appeal was filed, the statutory scheme mandated that we come directly here. And in all prior instances, the FTC's position as with most to anything happens at the appellate court level. And that's the way the FTC Act was created, but I think Axon now changes that and says that for the challenge of core constitutional rights, a petitioner, like my client, could go to district court. And I guess the easiest way, Judge Richman, is that if tomorrow the FTC came knocking at my client's door, under Axon, which is now established law of the land, we could directly go to the eastern district of Louisiana, file a constitutional challenge, and enjoin the administrative action on the constitutional basis. But previous to Axon, that did not exist. And I would say to your question, Judge Stewart, we did raise it in our responsive pleadings. We were not allowed an opportunity to try that issue. If you said you raised due process, did you raise Seventh Amendment jury trial right? We raised generally the lack of due process, which I think Judge Richman includes the lack of a jury trial because of the manner in which the case proceeded. Come on, that's a more particularized argument than just due process. Your Honor, I think that due process fundamentally includes a host of issues, a minimum of which would be if you involve a private right, you are entitled to a jury trial. We could not, I could not, in my answer, like I could in district court, I couldn't plead for a jury. The procedural rules don't allow me to do that. So I can't have a prayer for a jury. Their rules say you have to go before an administrative law judge. I haven't researched this in a long time, but there was a lot of confusion, at least on my part, about some administrative agencies you could raise constitutional challenges before the agency, others you couldn't. It was never clear to me what that dichotomy was, what the line drawn was. Here you're challenging a fundamental process of the agency. You say you're entitled to a jury trial. What's your best case that says you don't have to raise that with the agency, you don't have to go separately to a district court. The first time you can raise it, that kind of challenge is in the appellate court when you're appealing an adverse outcome of the agency determination. Judge Richman, I would say right now the best case on that is Axon, the Supreme Court's expression which recognized for the first time a petitioner's right to go directly to district court. Directly to district court. That's my point. That doesn't mean that we have jurisdiction on a direct appeal from an agency. That's where I'm . . . I think before that, you could only come to this court. If you apply Axon, which said that the agency is ill-suited to adjudicate a constitutional dispute because it's not an Article III court, how could you raise or be forced to raise . . . Well, just like they did. They went to district court and raised it. That's my point. You could have gone to district court. Maybe you still can and say, we don't have to go through this process. We're entitled to jury trial. What gives us jurisdiction in a direct agency appeal? The statute as it existed at the time this appeal was filed. The statute hasn't changed. The interpretation of . . . It meant what it meant from the beginning. You could have raised that. I'm just trying to get . . . You can still go to district court as far as I'm concerned. Why do we have jurisdiction? Had we raised . . . Had we gone to district court three years ago, we would have been met with an argument that the constitutional challenges are premature because the agency in action hasn't played out. Just like they took it up. That's a . . . I don't think we're meeting minds here. But I think . . . I don't think there's anything in the statute that precludes this court from adjudicating the constitutional claim as to whether or not the administrative agency follows the Constitution. I don't think there's anything that precludes this court from doing that. And I don't think the statute precludes this court from doing that. I would submit, Your Honor, the statute . . . I'm just asking for your best case. That's what I'm asking. I believe it's the statute itself which gives this court, as a court of first review, plenary authority over everything except Judge Richman facts. We also have the issue that was addressed in Jarkizi of improper delegation of legislative powers. This relates to the construction of 15 U.S.C. 45N. If you accept the FTC's argument that misrepresentation or deceptive practices has no tether to the statute, which is what's being advanced here, then you don't have an intelligible principle for the executive branch to follow. And that is a core violation of the Constitution. And as an example, you know, you look at what is a finding or a holding of the Commission . . . Indeed, the goal of these ads was to get consumers to appear at the dealership when they might not otherwise do so, potentially at substantial inconvenience and at risk to their health. And the ads were therefore material. Now, you have about three or four hypotheticals that they just assumed might happen without any evidence in the record that it did happen. And so you have this unintelligible principle where executive actors who are unconstitutionally insulated for removal can simply declare whatever they feel is a misrepresentation or a deceptive practice without any tether to 15 U.S.C. 45. And I think, Your Honors, that violates the Constitution's separation of powers. The FTC is doing this all over the place. They're doing it with Amazon. They're doing it with Tesla. They're doing it with the Illumina, the cancer research. Anything about your merits arguments? Yes, Your Honor. I'm not trying to tell you how to use it, but . . . On the merits, Your Honor, here are the two consumers that the FTC cites to. It is at risk to their health. The first consumer clearly was not tricked. There was no misrepresentation. The consumer recognized it as an automobile ad for auto relief. The second consumer says, consumer is upset it was not a stimulus check. So the entire factual premise of this witch hunt, that there was some bruise that was tricking the general public that required this immediate attention, is not even supported by the very evidence cited by the FTC to support its factual finding, much less substantial evidence. And I am going to reserve the balance of my five minutes. Thank you, judges. Good morning, Your Honors. May I please the Court? Imad Abed for the Federal Trade Commission. Before I get to my friend's arguments here, I'd like to point out that, in fact, he had not addressed any of the merits, the arguments on the merits. And I'm quite happy to answer any of your questions on the merits, but otherwise I'll turn to his arguments here today, which, interestingly, seem to be limited to only the arguments that he belatedly put into the reply. These arguments were not waived before were not raised before the Commission, and they were not raised in the opening brief, and so on. So I had to prepare for it a little bit for the argument, but bear in mind, we did not get the chance to brief any of these issues because they were only raised in the reply. Well, it's true, but, you know, we granted oral argument, and you all are here. Absolutely, Your Honor. And I'm happy to answer those questions, but I'd like to... Why don't you just start in the order, you know, deal with the issues. Acknowledge he didn't raise them. He said why he didn't, why he couldn't, so... Right, so I will get to... ...arguments about Jokisi and Axon and so forth. At the very end, he touched on the merits, so it's at least there, and it's predictable when he comes back up on rebuttal. He's going to say some more about it, so you might as well use your 20 minutes to cover the whole ground. I will absolutely do that, Your Honor, but I would like to bring to the Court's attention its own decisions in MTK, Sociedad, in Lockett, and in Sinel v. Conrick, where it basically held that arguments that are raised only in a reply brief are waived. Having said that, the arguments are basically, the two arguments he brings up are the Seventh Amendment right and the non-delegation doctrine. On the Seventh Amendment right, the right to a jury trial is for life, liberty, or property. None of these were involved here. In Jokisi, the issue was whether the SEC holding administrative hearing for civil penalties invoked the right to jury trial. There is no civil penalties involved here. The only issue, the only order that's on review before you today is an injunction, and the injunction does not implicate the jury trial. To his argument that they could not have raised it below until Exxon is doubly wrong, first, they certainly could have argued in the administrative hearing, as well as in the district court when the Commission went first for a TRO in the district court on the COVID mailer, they could have asked for a jury trial there, and they didn't. They could have argued in the Commission that the administrative hearing is unconstitutional because it doesn't involve a jury trial. They didn't. If you recall, Your Honor, in the companion case to Exxon was Cochran, which was from this court, and there the issue was whether the respondents there could have gone to the district court directly to raise constitutional questions, or they had to go through the administrative process and appeal directly to the Court of Appeals. That's what Exxon is about. It's about whether the district court had jurisdiction to hear the constitutional argument. It was never about waiver of these waivers. In fact, this court just last November in Community Financial Services refused to hear a constitutional argument because it was not raised before an agency bill. That's on the Seventh Right Amendment. It's simply not involved here because there is no civil penalties. He says that the Commission can go now, that there is an order on the books, that it can go and seek civil penalties in court. Then they certainly can ask for a jury trial then, but there is no violation of that amendment today. As far as the unconstitutional delegation of authority, again, I think this court's recent decision in Community Financial Services from back in November forecloses that argument completely because the court held that the CFPB's regulation of, quote-unquote, unfair, deceptive, or abusive acts or practices through a rulemaking, in fact, has been sufficiently given an intelligible principle to guide from Congress that the non-delegation doctrine does not apply. In effect, that Congress properly delegated the ability to regulate unfair or deceptive practices to the Bureau there. The same thing would apply here because, in fact, the language of the Bureau came from the FTC Act. So Congress's delegation to the Commission to regulate deceptive, unfair, or uncompetitive acts remains subject to the same standard of what the Commission can do and what it cannot do. What it did here is exactly, in fact, there was no rulemaking involved here. So all of the deceptive acts that the Commission raised here come from standards set by the courts themselves, not by the Commission, not through rulemaking, in other words. So the non-delegation doctrine also does not apply here because everything that the Commission has done in this case is according to standards that were set by the courts in applying the statutory guidance from Congress, and there was no rulemaking involved altogether. My colleague simply is coming to the game too late, trying to fit the facts of this case within what they perceive is a case on their side in JARCISI, but the facts do not apply at all. And even JARCISI itself, this court just last, two months ago now, in March, in Consumer Research versus the FCC, in fact, limited the non-delegation holding of JARCISI to only cases where there was no guidance at all. That's clearly not the case here. So the non-delegation argument also fails. My friend raised a number of constitutional arguments below, I'm sorry, in their opening brief that they did not raise below, and I'm happy to address those arguments quickly as well. On the due process argument, he says they raised it in their answer, but in fact they did not. The only due process argument that was raised in their answer, and only in their answer, they made no arguments to the Commission about that at all, is in fact a due process that is in their ninth affirmative defense, and here is the entire defense. That the administrative complaint is a violation of due process rights because respondents lack notice as to what constitutes unfair or deceptive trade practices because the statute is impermissibly vague and the FTC acted in violation of its own procedures regarding prior notice. That was the only due process argument they made, that they didn't have a notice of what would be a deceptive act. Of course, on the merits, the argument borders on the silly because the standards for what is deception are clear. They all come from the courts. They basically say if you make a representation, the representation is not true, and that representation is material, that is a deceptive act or practice that then you can be held liable for. That is what the record shows here. Their mailers speak for themselves. They made representations that consumers would win prizes or would win economic help from the government if they came to these car sale events, when in fact that was not true. Those representations clearly made a difference to consumers because many of them showed up based on those representations, and therefore those mailers were deceptive. Bearing in mind that the traffic jam did this in the face of multiple state court orders to hold that practice. That's why the commission felt that its own cease and desist order was necessary because this narrow settlement that is restricted to one state at a time clearly was not enough to change their business practices. That's on the due process and the remedy part. On the removal part, they raised both the removal of the commissioners and the removal of the ALG. I'll start with the commissioners because that seems to me the easy one. The Supreme Court in Humphreys Executor some 85, 90 years ago spoke directly on that and said that the removal restrictions for the FTC commissioners are constitutional. Granted, the Supreme Court can change its mind, but this court with all due respect has no power to do that. It has to apply Humphreys Executor and leave it for the Supreme Court to revisit if it chooses to. Here is what the Supreme Court said in a case called Rodriguez and then it quoted it again in Agostini, which is in our brief, which is directly on point here. It says, if a precedent of this court has direct application in a case yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls leaving to the court the prerogative of overruling its own decisions. So that's on the Humphreys Executor. Whether it's right or wrong, it simply is not before this court because the Supreme Court already spoke to that. I also need to mention that under the Supreme Court decision in Collins and under this court's also recent decision in Community Financial Services, whether or not the commissioners' removal conditions are constitutional or not, it changes nothing as far as the order itself is concerned because this court held that in order to change the remedy, you need to show three conditions. None of them are even alleged here, much less shown. They have to show that the president wanted to remove the commissioners, the president did not remove the commissioners on account of the statutory removal protections, and that that inability to remove has a direct nexus to the order on review. None of that is shown here. And so regardless of the constitutional issue, which is again, it's really for the Supreme Court to decide, the cease and desist order itself remains valid. And that also applies to the ALJ removal, by the way, which the argument itself suffers from another problem, which is that these respondents simply have no standing to bring that argument altogether because there was nothing that the ALJ did that in fact impacted the order on review that you have before you. And so there is no traceability of the injury. The injury they have is the cease and desist order. They cannot trace that injury to anything that the ALJ did, and there is no addressability. Again, both because the injury is not traced to the ALJ and also because of Collins, the Collins rule about what they needed to show in order to undo the cease and desist order itself. Weren't there some cease and desist orders or some action in the state courts? And were those affected by any of the agency actions? I'm sorry, Your Honor, I didn't... Weren't there some cease and desist orders or something to that effect in some of the states, Florida or Texas or whatever? Were those orders affected by the agency actions at all, or are those still in place, or... No, they're still in place, Your Honor, because depending on their four states that are at issue, in some of the states, traffic jam is now prohibited from doing business altogether in the state. So, and in other cases, the language of the orders differ, but they do not conflict with the FTC or... None of those are impacted by whatever we... No. No, they are not. All right, shift gears. In his brief, he argues that the Truth in Lending Act is not applicable to his clients because they're not creditors. So, you want to speak to that? Absolutely, Your Honor. The Truth in Lending Act has many provisions that, in fact, apply to creditors, and so you would have to show that the person being charged is first a creditor. But the provision that the commission charged that traffic jam violated does not have that limitation. Section 144 of the Truth in Lending Act speaks to advertisers. It talks about any advertisement that has these triggering terms. If it has a triggering term, then it must also have these other credit terms, such as the annual percentage rate of the credit, and so on. And so, that provision regulates advertisements and advertisers, regardless of their status as a creditor. That statutory reading is reinforced by the Federal Reserve's official interpretation of its own regulation, of Regulation Z, which implements that statutory provision, and expressly says that that provision applies to advertisers, regardless of whether or not they are also a creditor. So, that's on the Truth in Lending Act provision. Since I have a couple more minutes, I'll run quickly through their substantive arguments, the statutory arguments that they did raise below, as opposed to all the constitutional arguments they did not. They raised basically three statutory challenges, interstate commerce, Section 5N of the FTC, and materiality. The interstate commerce is, their argument first is only limited to the COVID mailer. They speak not at all about the prize mailer. And the record is clear that Traffic Jam is a Louisiana firm. It used printers in California and in Florida. It mailed those mailers everywhere, including in the record itself to Texas, Oklahoma, and Alabama. That is more than enough to satisfy the statutory affecting commerce provision in the FTC Act. On Section 5N, their claim is that Section 5 of the, that Section 5N's conditions apply here to the deceptive act. But Section 5N by its own terms apply only to unfair acts. Now, they make the ironic argument that what they did is also unfair, because it's deceptive. And while that may be true in colloquial sense, that is not true in the legal statutory sense. This Court has not spoken to this issue, but the Fourth, I'm sorry, the Third, the Eleventh, the Tenth, and the D.C. Circuit all recognize that Section N, the first, the FTC Act, regulates three different conducts. Competition, deceptive act, and unfair acts, which are distinct. Unfair acts are more like when somebody has a data breach. There is no deception involved, but the data breach nonetheless harms consumers. That's when Section 5 applies. It simply does not apply here. And there are cases on point from this circuit in the District Court in the Kennedy case from the Southern District of Texas that speaks to that directly. Lastly, the materiality case, their argument is simply that, well, we did not show that whatever misrepresentations they made, that it had anything to do with whether a consumer bought a car or not. But that's not the representation they made. They did not say, you will win a prize if you buy a car. They said, you will win a prize if you come to the dealership. And it turned out that was not true. And so the materiality does not relate to the sale of the car. It relates to the conduct of the consumer, particularly in the COVID instance when consumers had to actually leave their car. And so, in these situations, we ask that the court affirms the cease and desist order. Thank you, Your Honors. Judge Stewart, I promise I will take your suggestion and get to the merits, but I have three important points that I absolutely have to make. Judge Richman, there is no requirement that a litigant, a citizen of the United States, has to raise a constitutional challenge in a non-Article III court. The best case that the FTC has for that, if you read it, recognizes that principle. Because the only way in which you can find waiver is if you've made an objection at the time appropriate under its practice. Nothing that my learned counsel suggested. Where do I ask for a jury in the administrative action? Who do I go to? Do I go to the FTC commissioners themselves and tell them, you're unconstitutionally appointed? Where is that going to get me? Nowhere. Finally, the ALJ in one of his rulings prevented us from engaging in any sort of discovery to understand the basis for the FTC's complaint and whether they complied with the statutory requirement. So, if you really need particularized harm, there it is. Second, there's a lot of emphasis placed on Humphrey's executor. We addressed that in our brief. SELA law, I think, has effectively overruled Humphrey's executor, especially in the current circumstances under which the FTC, an unlawful executive agency— SELA law doesn't say it overrules Humphrey's. Your Honor, I think that— Well, I don't want to send you down a rabbit trail, but that's a pretty big statement. Stay on where you were. I don't remember reading anywhere it said it overruled. At page 11 of our reply brief, SELA law says to seek daunting monetary penalties against private parties. You may have said that, but that doesn't make it. Fair, and my learned counsel is correct. If Humphrey's is a law, then this panel has to follow Humphrey's. I would suggest that SELA does that. On jurisdiction, it's a very acute argument, but the statute says, unfair practices in or affecting commerce. Sending mail out to get printed in California is not interstate commerce. That's not the unfair practice that's being regulated. When you heard Louisiana entity, the mailers and all that stuff was sent out, I mean, really? The printers and all that? I mean, is that your strongest argument about it? I think the statutory . . . that's not the argument I'm relying on, Judge, but I think that if you read the statute, the statute requires more. It says in or affecting commerce. It's the unfair practice. It's not everything else. To the merits, Judge, on the COVID mailers, more than 45,000 mailers sent out. One thing that my learned counsel couldn't point you to, your honors, is a single consumer who has been harmed. 45,000 mailers, a success rate of those mailers of people that went and may have happily bought a car of less than one-tenth of a percent. How can that meet the statutory requirements set forth in 15 U.S.C. 45N, which says . . . Mailers said you will win a prize, and so to the extent . . . I don't have a view on this. I just read the mailer. It just says you will win a prize, et cetera. The allegation is people didn't, so does it turn on whether or not they actually bought a vehicle or whether their conduct was changed as a result of what was . . . What's the best case that says what happened here doesn't equal or what's alleged anyway? I don't have it on me, Judge, but we cited in our brief, every consumer who got one of those prize mailers won a prize, period. That's my best evidence on that, Judge. The standard of proof under 45 U.S.C., Section 15 U.S.C. 45N, the Commission shall have no authority under this section to declare unlawful an act or practice on the grounds that such an act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers. There's not a single consumer that showed up. The FTC was so scared to go to an evidentiary hearing that they took away our right to even put that on in front of the ALJ. I wanted to ask you, counsel opposite said what's pending below was injunctive relief, that there were no penalties, so part of his argument pushing back on the jury issue is that there were no penalties involved, and so if it was injunctive relief, does that trigger the jury argument? I think it still triggers a jury argument, and I think there are monetary penalties because what the FTC can now do . . . Does the order say that there are . . . On that order point, Your Honor, I do need to mention that the order, Provision 1, prevents my client from doing anything affiliated with the auto leasing business and sales business. He can't sell hot dogs. Question is within the order or orders that are complained about, does there exist now something that imposes any penalties as we understand it? Any time he participates in any sort of . . . No, Your Honor, but it gives the FTC the right to seek substantial monetary penalties for each violation. Are there any penalties that have been imposed as of the moment? At present, no, Your Honor. At present, currently, no. They were originally sought, the Supreme Court took them away in AMG Capital, but presently, you are correct, Your Honor. Fair enough. And that is the balance of my time, but if the court has any questions, I'd be happy to address them. Thank you, Counselor. Thank you.